9 F.3d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry Wayne HARDIN, Defendant-Appellant.
 No. 92-6620.
 United States Court of Appeals, Sixth Circuit.
 Nov. 9, 1993.
 
 Before: KEITH, NELSON, and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The defendant, Jerry Wayne Hardin, was convicted by a jury for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count I), and for pledging as security or disposing of a stolen firearm, in violation of 18 U.S.C. § 922(j) (Count II). On appeal, the defendant raises four primary claims of error: 1) that the government did not present sufficient evidence to support the firearm conviction under section 922(g); 2) that the government did not establish the interstate commerce nexus necessary to sustain conviction under section 922(j); 3) that the district court applied the wrong rule of law in denying Hardin's new trial motion; and 4) that the district court erred in imposing a sentence in excess of the statutory maximum authorized for a violation of section 922(j).
 
 
 2
 We conclude that the government presented sufficient evidence in the court below to sustain a conviction on both counts; that the district court properly denied the defendant's motion for a new trial; but that the district court exceeded the statutory maximum in sentencing the defendant under section 922(j). Accordingly, we remand the case for resentencing.
 
 I.
 
 3
 Between the hours of 4:00 p.m. on Saturday, January 18 and 1:00 a.m. on Sunday, January 19, 1992, Joe Presson's trailer in Benton County, Tennessee, was burglarized. Among the items stolen was a Smith & Wesson 10-mm automatic pistol. Trial testimony established that the pistol had been manufactured in Springfield, Massachusetts, and had been shipped to a dealer in Birmingham, Alabama, before coming into Presson's hands in Tennessee.
 
 
 4
 On the afternoon of January 19, the defendant arrived with a friend nicknamed "Big Man," at a residence in McNairy County that was the site of frequent gambling activity. Shortly after the defendant and Big Man arrived, one James Roland was called away from the card table to a back room. There, the defendant and Big Man showed Roland the Smith & Wesson that had been stolen the night before, and asked Roland if he was interested in buying or pawning it. Roland agreed to pawn it for $300.00, but said he would like to buy it outright for their $500.00 asking price if he could win some cash at the card table. Roland then returned to the table.
 
 
 5
 After some 15 to 30 minutes, Roland told the defendant that he would pawn the pistol as agreed. Larry "Tomahawk" Tomaszewski, who was also present that day, testified:
 
 
 6
 Well, Mr. Roland resumed his place, and the other two just stood back for a few minutes. And then Mr. Roland said, "I can do that deal now," or something in that vicinity, "but not for five. I can do it for three." And they both sort of nodded and agreed.
 
 
 7
 Roland gave the defendant $300.00 in exchange for the pistol, and the defendant, in turn, gave $100.00 to Big Man. While Tomaszewski's trial testimony revealed some equivocation as to whether the defendant handed the gun to Roland, or Roland took the gun from a coat pocket, Tomaszewski's consistent recollection at trial was that the defendant took the gun out of a coat pocket and handed it to Roland.
 
 
 8
 The district court instructed the jury that, to find the defendant guilty on either of the two counts charged, the jury must find, as one element, that the firearm was shipped in interstate commerce. The jury returned a verdict of guilty on both counts. Subsequently, the district court denied the defendant's motion for a new trial, finding sufficient credible evidence to sustain the conviction. The district court then sentenced the defendant to 240 months on each of the two counts, the sentences to run concurrently.
 
 II.
 
 9
 The defendant argues that the government failed to prove he was in possession of the firearm, an essential element of a section 922(g) violation. Moreover, the defendant argues that Roland was not a credible witness.
 
 
 10
 In reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Viewing evidence "in the light most favorable to the government [includes] resolv[ing] all inferences which may reasonably be drawn from the evidence in the government's favor and resolv[ing] all conflicts in the testimony in the same way." United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983). The court is not to determine issues of witness credibility, because such findings are "solely within the province of the jury." United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988).
 
 A.
 
 11
 A conviction under 18 U.S.C. § 922(g)(1) requires proof that a defendant, inter alia, "possess[ed] in or affecting commerce, any firearm ... or ... receive[d] any firearm ... which has been shipped or transported in interstate ... commerce." Id. As this court has held, possession of a firearm under 18 U.S.C. § 922(g) may be either actual or constructive. United States v. Moreno, 933 F.2d 362, 373 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991). Possession "need not be exclusive but may be joint." United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). Moreover, the evidence offered to prove possession can be direct or circumstantial, or both. Id.
 
 
 12
 A person has actual possession when he "knowingly has direct physical control over a thing at a given time." United States v. Prujansky, 415 F.2d 1045, 1049 (6th Cir.1969). Constructive possession, on the other hand,
 
 
 13
 exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.
 
 
 14
 United States v. Craven, 478 F.2d at 1333. While a defendant's "[m]ere presence on the scene plus association with illegal possessors is not enough to support a conviction ... other incriminating evidence, coupled with presence," is sufficient to establish constructive possession. United States v. Birmley, 529 F.2d 103, 107-08 (6th Cir.1976).
 
 
 15
 Recently, the court found a defendant in constructive possession of a firearm, based on the combined effect of the defendant's statement that he might let another use a certain pistol, his presence when the pistol was delivered, and his willingness to accept part of the money offered by the undercover agent who was "purchasing" the gun. United States v. Poulos, 895 F.2d 1113, 1119 (6th Cir.1990). On these facts, the court concluded, the jury was "entitled ... to find that [the defendant] exercised the necessary dominion over the weapon...." Id. It was immaterial that the defendant's cohort, who also was present, appeared to own the pistol and received the bulk of the proceeds from the transaction. Id.
 
 
 16
 The facts here cannot be meaningfully distinguished from Poulos. The evidence was uncontroverted that the defendant negotiated the pawn and accepted most of the cash tendered for the gun; evidence sufficient to establish at least constructive possession of the pistol. As in Poulos, it is immaterial that the defendant's possession might not have been exclusive, or that Big Man also received some cash from the exchange. Id.
 
 
 17
 The defendant argues, however, that the government's proof was circumstantial and that witness Roland's contradicted testimony was "highly suspect." The defendant relies on United States v. Leon, 534 F.2d 667 (6th Cir.1976), in which the court reversed a conviction "because there [wa]s no direct evidence of [the defendant's] guilt, and the conviction [wa]s supported only by circumstantial evidence from which one c[ould] infer either facts tending to prove the defendant's guilt, or facts tending to prove his innocence." Id. at 677.
 
 
 18
 Subsequent opinions of this court have recognized that Leon presented a unique fact situation in which the evidence equally supported an innocent and a criminal scenario. Thus, the Leon standard is inapplicable where the government's evidence is direct as well as circumstantial, see United States v. Battista, 646 F.2d 237, 246 (6th Cir.), cert. denied, 454 U.S. 1046 (1981), or where the evidence, taken cumulatively, adequately supports a criminal culpability, United States v. Ingrao, 844 F.2d 314, 316 (6th Cir.1988). Simply put, "there is no requirement that circumstantial evidence remove every hypothesis but guilt." Id. at 315.
 
 
 19
 Here, the government's testimony contained some equivocation, and was contradicted in some respects by the testimony of the defendant's private investigator. However, there was no contradiction of the salient facts that the defendant negotiated the pawn and took Roland's money in exchange for the pistol. Given that it is the province of the jury to decide credibility issues, the defendant's first claim of error is unfounded.
 
 B.
 
 20
 In support of his second claim of error, the defendant argues that this court's decision in United States v. West, 562 F.2d 375 (6th Cir.1977), cert. denied, 435 U.S. 922 (1978), establishes that there can be no violation of section 922(j), the prohibition on disposing of a stolen firearm, without proof that the weapon in question crossed state lines after being stolen. Here, the government proved only that the pistol travelled in interstate commerce before being stolen. On this basis, the defendant challenges the sufficiency of the evidence. For this same reason, he challenges the indictment and the jury instructions, as failing to identify an essential element of the crime charged.
 
 
 21
 This court recently reconsidered West in light of a 1990 amendment to section 922(j), and rejected the same argument the defendant raises here. In United States v. Honaker, --- F.3d ---- (6th Cir.1993), the court examined the statutory provision in its amended form, as well as the legislative history of the amendment, and concluded that there is "no doubt that Congress intended [section] 922(j) to apply to firearms that have travelled in interstate commerce, both prior to or after being stolen." Id. at ---- (emphasis added). Accordingly, Honaker forecloses the defendant's claims of error based on West.
 
 C.
 
 22
 The defendant next maintains that the district court applied an erroneous legal standard in denying his motion for a new trial. At oral argument before this court, a question arose concerning the timeliness of the motion. Upon closer examination of the record, however, we are satisfied that the motion was timely under Fed.R.Crim.P. 45(a).
 
 
 23
 The defendant claims that the court reviewed his new trial motion under the standard applicable to motions for judgment of acquittal rather than the more lenient new trial standard, and that the district court should have considered the credibility of the witnesses in deciding the motion. In reviewing the district court's denial of the defendant's new trial motion, this court "does not sit as a 'thirteenth juror' to judge the credibility of witnesses," nor does it "reweigh the evidence." United States v. Ashworth, 836 F.2d 260, 266 (6th Cir.1988). It is the district court that is to assess the evidence, and this court will review the trial court's evaluation only for " 'a clear and manifest abuse of discretion.' " Id. (citations omitted). Furthermore, "[a]n abuse of discretion exists only when the reviewing court is firmly convinced that a mistake has been made." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir.1993).
 
 
 24
 Under the Federal Rules of Criminal Procedure, "[t]he court on motion of a defendant may grant a new trial ... if required in the interest of justice." Fed.R.Crim.P. 33. Such a motion, when challenging the verdict as being against the great weight of the evidence, differs from a motion for acquittal in that, on a new trial motion, the "trial judge can consider the credibility of the witnesses and the weight of the evidence." Ashworth, 836 F.2d at 266 (citations omitted). However, the decision to grant a new trial is within the discretion of the district court and "the [c]ourt should exercise such discretion only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." Id.
 
 
 25
 In Ashworth, the defendants argued that they were entitled to a new trial because defense witnesses provided testimony contradicting the government's proofs. Id. at 264-65. The court concluded that this contradictory testimony was not an adequate basis to reject the jury's verdict, even under the new trial motion's "broader standard of review," because "the jury was not by any means compelled to accept the [defendants'] defenses." Id. at 264.
 
 
 26
 The defendant argues that the court should adopt certain refinements to the Ashworth rule recognized in some other circuits. The defendant primarily relies on United States v. Morales, 902 F.2d 604, amended, 910 F.2d 467 (7th Cir.1990), in which the Seventh Circuit reversed a district court's refusal to grant a new trial. 902 F.2d at 609. Morales presented an extraordinary case. In fact, the district court there entertained a "serious concern" that a new trial was warranted:
 
 
 27
 So troubled was [the trial judge] that after turning down the motion for a new trial he asked the government (as if he were a French juge d'instruction ) to conduct a further investigation of the crime, to make sure it had not prosecuted the wrong person.
 
 
 28
 Id. at 606. As the Seventh Circuit cautioned, "A jury verdict in a criminal case is not to be overturned lightly...." Id. at 605.
 
 
 29
 Here, the district court applied the correct legal standard in denying the defendant's new trial motion. The district weighed the evidence and assessed the witnesses' credibility. In so doing, the court found that "the evidence of the government was, in some respects, equivocal." However, it further found that, despite such equivocation, "there was sufficient credible evidence to support a conviction in this case." This is not the exceptional case of the Morales sort. Rather, it is a case like Ashworth, where the jury, faced with contradictory testimony, chose to credit the government's witnesses rather than the defendant's. As such, the jury's verdict cannot be characterized as against the great weight of the evidence.
 
 D.
 
 30
 Finally, the defendant claims that the 240-month sentence for his violation of 18 U.S.C. § 922(j) is in excess of the statutory maximum ten-year sentence under 18 U.S.C. § 924(a)(2). Accordingly, he asks that he be resentenced on this count.
 
 
 31
 The district court sentenced the defendant to 240 months, or 20 years, imprisonment for his violation of 18 U.S.C. § 922(j). As the defendant correctly points out, federal law imposes a maximum ten-year sentence for violations of section 922(j). 18 U.S.C. § 924(a)(2). The district court also imposed a 240-month sentence for the defendant's violation of section 922(g), which, given the defendant's multiple prior felony convictions, imposes a 15-year minimum sentence. See 18 U.S.C. § 924(e)(1). Although the two sentences are to run concurrently, we cannot say that the district court would have calculated the same sentence had it considered the sentences in light of the appropriate statutory minimum and maximum sentences. Accordingly, we remand the case to the district court for resentencing.
 
 III.
 
 32
 The defendant's convictions are AFFIRMED and the case is REMANDED for further sentencing proceedings.
 
 
 33
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 34
 For the reasons stated in my dissent in United States v. Honaker, --- F.3d ----, ---- (6th Cir.1993), I continue to believe that Honaker was wrongly decided. I recognize that our court policies make reported panel opinions binding on subsequent panels, however, and I concur in Part II B of Judge Ryan's opinion on that basis. In all other respects I concur without reservation.